# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHELLE MARQUARDT, | Civil No.  14-2958 (JRT/HB) |
| Plaintiff, | |
| v. | |
| CITY OF BLAINE, CITY OF BLOOMINGTON, BLUE EARTH COUNTY, CITY OF BROOKLYN CENTER, CITY OF BURNSVILLE, CITY OF CANNON FALLS, CITY OF CENTERVILLE, CITY OF CIRCLE PINES, CITY OF COTTAGE GROVE, DAKOTA COUNTY, CITY OF DETROIT LAKES, CITY OF DUNDAS, CITY OF EAGAN, FARMINGTON, GRAND RAPIDS, HENNEPIN COUNTY, CITY OF LEXINGTON, CITY OF MANKATO, CITY OF MENDOTA HEIGHTS, METROPOLITAN COUNCIL, CITY OF MINNEAPOLIS, CITY OF MINNETONKA, MINNEAPOLIS PARK & RECREATION BOARD, CITY OF NEW HOPE, CITY OF NEW ULM, NORMAN COUNTY, RAMSEY COUNTY, CITY OF ROSEMOUNT, CITY OF ROSEVILLE, SHERBURNE COUNTY, CITY OF ST. PAUL PARK, CITY OF ST. PAUL, CITY OF WEST ST. PAUL, MICHAEL CAMPION, RAMONA DOHMAN, JOHN AND JANE DOES (1-500), MINNESOTA DEPARTMENT OF PUBLIC SAFETY DOES (1-50), and DEPARTMENT OF PUBLIC SAFETY DOES (1-30). | **MEMORANDUM OPINION AND ORDER ON MOTIONS TO DISMISS** |
| Defendants. | |

Sonia L. Miller-Van Oort and Lorenz F. Fett, Jr., **SAPIENTIA LAW GROUP**, 120 South Sixth Street, Suite 100, Minneapolis, MN  55402, for plaintiff.

Stephanie A. Angolkar, **IVERSON REUVERS CONDON**, 9321 Ensign Avenue South, Bloomington, MN  55438, for defendant Cities of Blaine, Bloomington, Brooklyn Center, Burnsville, Cannon Falls, Centerville, Circle Pines, Cottage Grove, Detroit Lakes, Dundas, Eagan, Farmington, Grand Rapids, Lexington, Mankato, Mendota Heights, Minnetonka, New Hope, New Ulm, Rosemount, Roseville, St. Paul Park, and West St. Paul.

Margaret A. Skelton, **RATWIK ROSZAK & MALONEY**, 730 Second Avenue South, Suite 300, Minneapolis, MN  55402, for defendant Counties of Blue Earth, Norman, and Sherburne.

Amelia N. Jadoo, Assistant County Attorney, **DAKOTA COUNTY ATTORNEY'S OFFICE**, 1560 Highway 55, Hastings, MN  55033, for defendant Dakota County.

Toni A. Beitz and Beth A. Stack, Assistant County Attorneys, **HENNEPIN COUNTY ATTORNEY'S OFFICE**, 300 South Sixth Street, Suite C-2000, Minneapolis, MN  55487, for defendants Hennepin County and John and Jane Does (1-500).

Daniel L. Abelson, **METROPOLITAN COUNCIL**, 390 Robert Street North, Saint Paul, MN 55101, for defendant Metropolitan Council.

Andrea Kloehn Naef, Assistant City Attorney, **MINNEAPOLIS CITY ATTORNEY'S OFFICE**, 350 South Fifth Street, Room 210, Minneapolis, MN  55415, for defendant City of Minneapolis.

Daniel A. Louismet, **RICE, MICHELS & WALTHER LLC**, 206 East Bridge-Riverplace, 10 Second Street N.E., Minneapolis, MN  55413, for defendant Minneapolis Park & Recreation Board.

Kimberly R. Parker and Robert B. Roche, Assistant County Attorneys, **RAMSEY COUNTY ATTORNEY'S OFFICE**, 121 Seventh Place East, Suite 4500, Saint Paul, MN  55101, for defendant Ramsey County.

Kara M. Kisch, Assistant City Attorney, **OFFICE OF THE ST. PAUL CITY ATTORNEY**, 750 Courthouse and City Hall, 15 West Kellogg Boulevard, Saint Paul, MN  55102, for defendant City of Saint Paul.

Oliver J. Larson, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101, for defendants Michael Campion and Ramona Dohman.

Plaintiff Michelle Marquardt ("Marquardt") brings this action against various cities and counties in Minnesota, along with several other governmental entities and officials ("defendants"), alleging that law enforcement officers illegally accessed her driver's license information, in violation of the Driver's Privacy Protection Act ("DPPA").  The various defendants have filed ten motions to dismiss, arguing that most of Marquardt's claims are barred by the applicable statute of limitations and that Marquardt has failed to allege sufficiently violations of the DPPA.  The defendants also argue that any remaining claims should be severed.  Because the statute of limitations bars most of Marquardt's claims, the Court will grant, in part or in full, each of the ten motions to dismiss.  The Court will dismiss some of the remaining claims because they do not allege a suspicious pattern of accesses by the defendant entities.  However, because Marquardt has made plausible allegations against the City of Minneapolis, the Court will deny in part that city's motion to dismiss.[1]

## BACKGROUND

On July 21, 2014, Marquardt filed a complaint asserting one DPPA count against numerous city, county, and other defendants.  (Compl. ¶¶ 412-34, July 21, 2014, Docket No. 1.)  Specifically, Marquardt named the following defendants:

---

[1] The Court will refer to the city defendants who filed the motion to dismiss at Docket No. 87 as the "city defendants."  Of course, the cities of St. Paul and Minneapolis – who have filed their own, separate motions to dismiss – are also "city" defendants, but the Court will refer to them by their names.

- Auto Save, Inc.[2];

- Law firm of Johnson & Turner[3];

- Counties of Blue Earth, Dakota, Hennepin, Norman, Ramsey, and Sherburne[4];

- Cities of Blaine, Bloomington, Brooklyn Center, Burnsville, Cannon Falls, Centerville[5], Circle Pines, Cottage Grove, Detroit Lakes, Dundas, Eagan, Farmington, Grand Rapids, Hastings, Lexington, Mankato, Mendota Heights, Minneapolis, Minnetonka, New Hope, New Ulm, Rosemount, Roseville, St. Paul Park, St. Paul, and West St. Paul[6];

- The Metropolitan ("Met") Council;

- Minneapolis Park & Recreation Board;

- Entity/municipality Does (1-50);

---

[2] Marquardt voluntarily dismissed Auto Save on October 21, 2014. (Notice of Dismissal, Oct. 21, 2014, Docket No. 53.)

[3] Johnson & Turner was dismissed on October 8, 2014. (Stipulation of Dismissal, Oct. 8, 2014, Docket No. 40.)

[4] Although not included in the complaint caption, and not listed as a party, Marquardt's complaint also includes allegations against Stearns County. (Compl. ¶¶ 239-42.) Marquardt asks the Court for leave to add Stearns County to the caption, and to add Stearns County to the docket listing. (Marquardt Br. in Opp'n to County Defs.' Mot. to Dismiss and/or Sever at 1 n.1, Oct. 27, 2014, Docket No. 55.) Because Stearns County does not appear to oppose this request, and is listed on a motion to dismiss with Blue Earth, Norman, and Sherburne Counties, the Court will grant it.

[5] Centerville, Circle Pines, and Lexington run the Centennial Lakes Police Department through a joint powers agreement. (*Id.* ¶ 124.)

[6] Marquardt also asks for leave to add the City of Hastings, Minnesota to the caption, and for the city to be added to the docket listing. (Marquardt Br. in Opp'n to City Defs.' Mot. to Dismiss at 2 n.1, Dec. 8, 2014, Docket No. 107.) The Court will deny this request. It is true that Hastings is listed explicitly in the complaint as a defendant and that the complaint contains allegations against Hastings. (Compl. ¶¶ 32, 162-66.) But there is no indication that Hastings acquiesced to being added, such as by being represented in motion to dismiss briefing. Moreover, it does not appear from the docket that Marquardt served a complaint or summons on Hastings or that, like the other cities in this case, Hastings waived service. (*See* Docket Nos. 3-6, 21); *see also* Fed. R. Civ. P. 4(m). As a result, the Court will deny Marquardt's request to add Hastings to the caption and will dismiss Marquardt's claims against Hastings. Fed. R. Civ. P. 4(m); *see also Braun v. I.R.S.*, No. 05-932, 2005 WL 2203169, at *4 n.1 (D. Minn. Sept. 9, 2005).

- Defendant John and Jane Does (1-500);
- Michael Campion, former Minnesota Department of Public Safety ("DPS") Commissioner; and Mona Dohman, current Minnesota DPS Commissioner; and
- DPS Does (1-30).

(Compl. ¶¶ 10-57.)

Marquardt is a nurse in Hastings, Minnesota who recently moved from Minnesota to Prescott, Wisconsin. (*Id.* ¶ 58.) She lived in Hastings, Minnesota from 1988 to 2011, and later lived in Hugo, Minnesota and Woodbury, Minnesota. (*Id.* ¶¶ 60-62.) Her brother was a police officer in Minneapolis for two years around 2000, her sister worked for the Chisago County Sheriff's Department and is currently a federal agent working for the United States Department of Homeland Security, and Marquardt herself was married to a Minnesota state patrol officer – working in the St. Paul area – from 1988 through their divorce in 2008. (*Id.* ¶¶ 65-68.) Although her husband's work was based in the St. Paul area, he also worked at the Mall of America and out of the Cottage Grove and Mendota Heights police departments. (*Id.* ¶ 68.) Marquardt's ex-husband, and Marquardt herself, knew law enforcement personnel from many of the other communities listed in her complaint, such as Eagan, Mendota Heights, Rosemount, Hastings, and Dakota County. (*Id.* ¶¶ 69-73.) In addition, Marquardt dated and was engaged to a Minneapolis police officer through 2013. (*Id.* ¶ 74.) That police officer had friends in law enforcement in Ramsey County, Hennepin County, Burnsville, and Minneapolis. (*Id.*) He at one point filed assault charges against her in Washington County, but searches related to that incident are not charged in this complaint. (*Id.* ¶ 75.)

In 2013, Marquardt requested an audit from the DPS of the instances in which law enforcement officers had searched for her name in the state's Driver and Vehicle Services Division "DVS" database ("DVS Database"). (*Id.* ¶¶ 342-44.) Based on that audit, which she received on July 30, 2013, she alleges that her name was searched, or "obtained" under the DPPA, nearly 270 times by employees of the named defendants since 2003. (*Id.* ¶¶ 344-46). She attaches as Exhibit A to her complaint the list of those searches, separated by the government unit that performed each search. (*Id.*, Ex. A.) Because of the sheer number of searches, the Court will not replicate the list in this Order.

Marquardt filed her complaint on July 21, 2014, alleging one DPPA count against each of the defendants listed above, based on the 270 "obtainments" of her driver's license information. (Compl.) The DPPA, 18 U.S.C. § 2721, *et seq.*, provides a private right of action to a person whose driver's license information is misused:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

Based on (1) her ties to law enforcement through family and romantic relationships; (2) the assertion that she was never investigated or prosecuted in any of the defendant communities; (3) the assertion that she had never committed crimes or been sued in (or even been to many of) the defendant communities; (4) the assertion that she had never been involved in any civil, criminal, administrative, or arbitral proceeding in any of the defendant communities or in relation to any organizational or individual

defendants; and (5) the assertion that many searches occurred late at night or on the same day by multiple unrelated entities, and otherwise occurred in suspicious patterns; Marquardt claims that all of the defendants' searches listed in Exhibit A were not for a permissible purpose under the DPPA.[7]  (*Id.* ¶¶ 90-262, 349-51.)  Marquardt also cites the State of Minnesota's Legislative Auditor's testimony that at least half of Minnesota law enforcement officers are misusing the DVS Database.  (*Id.* ¶ 399.)  As for the DPS Commissioners and unidentified DPS defendants, Marquardt alleges a violation of the DPPA because the DPS created a loosely controlled system that allows for law enforcement personnel to look up driver's license information at will, for any reason, and without any checks on the reason underlying a lookup.  (*Id.* ¶¶ 263-341.)

In October and November of 2014, various defendants filed ten motions to dismiss.  The Court will address the specifics of the various motions below.  In general, the defendants argue that most of Marquardt's claims are time-barred under the applicable statute of limitations.  For those claims that are not time-barred, the defendants argue that Marquardt's complaint should be dismissed because she has (1) failed to show that simply viewing her information amounts to an impermissible "obtainment," and (2) failed to show that the lookups were not for permissible reasons.  Some defendants also argue that the claims are barred by law enforcement officers' qualified immunity.

---

[7] In at least one instance, Marquardt acknowledges having some ties to a defendant that might justify a DVS Database search of her information (i.e., being pulled over by a Minneapolis Park & Recreation officer), but clarifies that this incident occurred long after the illegal access of her information.  (Compl. ¶ 201.)

Some defendants also argue that any claims that survive the motions to dismiss should be severed, so that the defendants face each claim alone.

## DISCUSSION

## I.   STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "'claim to relief that is plausible on its face.'"  *See, e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp.*, 550 U.S. at 555 (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed.  *Id.* (internal quotation marks omitted).  Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue.  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

## II.      DPPA

### A.      Statute of Limitations

The DPPA contains no explicit statute of limitations provision.  *See* 18 U.S.C.

§ 2724.  As a result, since the statute was enacted after 1990, *see Reno v. Condon*, 528

U.S. 141, 143 (2000), the general catchall statute of limitations found in 28 U.S.C. § 1658

applies to DPPA claims.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382

(2004) (concluding that Section 1658 governs statutory claims that contain no explicit

statute of limitations and are "made possible by a post-1990 [statutory] enactment").

Section 1658 contains the following two provisions:

(a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

(b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 . . . may be brought not later than the earlier of—

(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation.

28 U.S.C. § 1658.

In its prior decision in *Myers v. Aitkin County*, this Court considered whether the

standard accrual rule (dictating that the limitations period runs from the date the injury

**occurred**) or the discovery rule (dictating that the limitations period runs from the date

the injury was **discovered**) applies to Section 1658 and the DPPA.  *Myers v. Aitkin Cty.*,

No. 14-473, 2014 WL 7399182, at *9-*10.  The Court held that the standard accrual rule

applies.  *Id.* at *10.  Marquardt offers no compelling reason to deviate from that holding.

Moreover, the Eighth Circuit has since weighed in on this issue, affirming district court decisions that reached the same conclusion as this court in *Myers*. *See McDonough v. Anoka Cty.*, --- F.3d ---, 2015 WL 4940110, at *7 (8th Cir. Aug. 20, 2015) ("In light of the foregoing policy considerations, as well as the text and structure of § 1658, we conclude that the statute of limitations for these DPPA violations began to run when the violations occurred.  We thus affirm the dismissal of claims of violations that occurred more than four years prior to the filing of the complaints.")

As a result, in this case, as in *Myers*, "the four-year limitations period in Section 1658(a) runs from the time of the occurrence(s) of the alleged injuries against [Marquardt]." *Myers*, 2014 WL 7399182, at *10.  To fit within that limitations period, given that the complaint in this case was filed on July 21, 2014, "the alleged illegal obtainment of [Marquardt's] driver's license information must have occurred on or after" July 21, 2010. *Id.*

As the defendants correctly point out, most of the alleged wrongful accesses of Marquardt's driver's license information that underlie this complaint occurred before July 21, 2010.  As a result, before reaching any other issues or arguments in this case, the Court will grant, either in full or in part, all motions to dismiss as to accesses that occurred prior to July 21, 2010.

Specifically, the Court will grant, in full, the motion to dismiss of Blue Earth, Norman, Sherburne, and Stearns Counties, (Mot. to Dismiss of Blue Earth, Norman, Sherburne, and Stearns Counties, Oct. 6, 2014, Docket No. 30), since all of the accesses underlying the DPPA claims against those counties occurred before July 21, 2010.

(Compl., Ex. A at 1, 10-11, 15.)   The Court will grant Hennepin County's motion to dismiss, (Mot. to Dismiss of Hennepin County, Oct. 10, 2014, Docket No. 42), in full, since the single illegal access allegedly conducted by Hennepin County occurred on January 3, 2005.  (Compl., Ex. A at 4.)  The Court will grant in full the Met Council's motion to dismiss, (Met Council Mot. to Dismiss, Nov. 7, 2014, Docket No. 61), since the one allegedly improper access underlying Marquardt's claim against that entity occurred on February 23, 2004.  (Compl., Ex. A at 5.)  The Court will grant in full the Minneapolis Park & Recreation Board's motion to dismiss, (Minneapolis Park & Recreation Board Mot. to Dismiss, Nov. 11, 2014, Docket No. 67), since the one illegal access Minneapolis Park employees allegedly committed took place in 2005.  (Compl., Ex. A at 10.)  Similarly, the Court will grant motions to dismiss filed by the City of St. Paul and Ramsey County, (City of St. Paul Mot. to Dismiss, Nov. 12, 2014, Docket No. 72; Ramsey County Mot. to Dismiss, Nov. 13, 2014, Docket No. 77), because all DVS Database accesses underlying claims against those entities occurred before July 21, 2010.  (Compl., Ex. A at 10-11.)

As to Dakota County, the Court will grant that defendant's motion to dismiss in part, (Dakota County Mot. to Dismiss, Nov. 17, 2014, Docket No. 82), as to the twelve of thirteen allegedly illegal Dakota County accesses that occurred prior to July 21, 2010. (Compl., Ex. A at 2.)  Similarly, the Court will grant the city defendants' motion to dismiss in part, (City Defendants Mot. to Dismiss, Nov. 17, 2014, Docket No. 87), as to the all but four city defendant accesses that occurred before July 21, 2010.  (Compl., Ex. A at 1-3, 5, 10, 15-16.)  Marquardt's claims against all of the city defendants, except

for those against Centerville, Circle Pines, Lexington, and West St. Paul,[8] will be dismissed because they are time-barred.  (*Id.* at 1, 15-16.)  Finally, because all but four of the accesses on which Marquardt's claims against Minneapolis are based are time-barred, (*id.* at 5-10), the Court will grant in part Minneapolis's motion to dismiss as to the pre-July 21, 2010 accesses, (City of Minneapolis Mot. to Dismiss, Nov. 17, 2014, Docket No. 93).

### B.      Obtainment for a Purpose Not Permitted

#### 1.      Governing Law

In order to state a DPPA claim, a plaintiff must establish four elements: "that the Defendants 1) knowingly 2) obtained, disclosed, or used personal information, 3) from a motor vehicle record, 4) for a purpose not permitted."  *McDonough*, 2015 WL 4940110, at *9; *see also Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010); *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1111 (11th Cir. 2008).

To establish the second element (that the defendants "obtain[ed]" the plaintiff's information), it is sufficient for a plaintiff to show that "people with access to the DVS Database viewed [the plaintiff's] personal driver's license information."  *Myers*, 2014

---

[8] The city defendants offer no support for their argument that the DPPA claims based on the three accesses by the City of West St. Paul should be dismissed simply because those accesses happened at an earlier time on July 21, 2010 than Marquardt filed her complaint on July 21, 2014.  *See, e.g.*, *In re K Chem. Corp.*, 188 B.R. 89, 95 (Bankr. D. Conn. 1995) ("On occasion, the United States Supreme Court has stated the . . . common-law rule that individual days should not be fractionalized.").  The Court will not dismiss Marquardt's claims against West St. Paul based on the statute of limitations.

WL 7399182, at *12.  To the extent the defendants dispute the conclusion that viewing DVS information amounts to "obtaining" it, the Court sees no reason to re-visit its prior holding.  Here again, the Eighth Circuit has also recently reached the same conclusion. *McDonough*, 2015 WL 4940110, at *8 ("In the context of the DPPA, the word 'obtain' unambiguously includes access and observation of the data."); *see also Nelson v. Jesson*, No. 13-340, 2013 WL 5888235, at *2 (D. Minn. Nov. 1, 2013) ("In the Court's view, information may be 'obtained' simply through viewing.").  The first and third elements are not in dispute.  Consequently, the Court concludes that Marquardt has made plausible allegations against the remaining defendants as to the first three elements.

To establish the fourth element, the plaintiff must show that the "obtainment, disclosure, or use was not for a purpose enumerated under [18 U.S.C.] § 2721(b)." *Taylor*, 612 F.3d at 335 (internal quotation marks omitted).  One of the permitted purposes under Section 2721(b) – the one most relevant to this case – is "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions."  18 U.S.C. § 2721(b)(1).

The Court in *Myers* considered how a plaintiff might demonstrate plausibly that an access was not for a proper purpose.  In that case, the Court concluded that the plaintiff had pled against several cities and counties allegations with sufficient detail to survive a motion to dismiss, where she listed eighty-four obtainments of her information (some of which were time-barred) and where she alleged the following facts:

> [H]er professional prominence [as an attorney] and ties to law enforcement, the timing and number of the searches [some of which occurred late at night], her husband's profession [as a law enforcement official], the fact that the searches were by name, the fact that she had not committed any

criminal behavior or been tied to any criminal investigation, and the
Legislative Auditor's telling report on misuse of the DVS Database.

*Myers*, 2014 WL 7399182, at \*14, \*17; *see also Mallak v. Aitkin Cnty.*, 9 F. Supp. 3d

1046, 1057 (D. Minn. 2014) (alleging that the defendants were interested in plaintiff

based on her role as an attorney and in the community, and where, as a result, most of the

lookups of plaintiff were in the areas where she worked).

The Eighth Circuit in *McDonough* has more recently clarified how a plaintiff

might demonstrate a plausible DPPA claim.  *McDonough*, 2015 WL 4940110, at \*9-\*17.

The court noted that claims against each defendant must be assessed independently, but

not in isolation.  *Id.* at \*10.  The court also stated that "allegations concerning data

accesses that do not themselves constitute violations because they are barred by the

statute of limitations still may be considered in assessing the plausibility of timely

claims."  *Id.* at \*10.

The court reversed district court dismissals of DPPA claims against certain

defendant entities and agencies, along with unnamed Law Enforcement Does, where

plaintiffs had alleged:

> (1) a large total number of accesses;
>
> (2) that he or she had committed no crimes that would justify the accesses;
>
> (3) professional relationships with law enforcement "or a degree of local fame,"
> even if no allegation of a specific relationship with particular officers or agents;
>
> (4) the legislative auditor's report on misuse of the DVS Database; and,
>
> (5) most importantly, a suspicious access pattern at the defendant entity or agency
> against whom the claim was asserted, including "accesses on the same day or
> within a few hours of accesses by other, unrelated entities during the limitations
> period[,] . . . multiple late-night accesses during the limitations period[,] or . . . a
> history of frequent suspicious accesses fitting the above criteria, even if prior to
> the limitations period, coupled with accesses within the limitations period."

*Id.* at *10-*17.   The court focused in particular on the last type of allegation, suspicious

patterns of access at the specific defendant entity or agency.  *Id.* at *13-*17.  It cautioned

that generalized allegations of fame or ties to law enforcement, or that a plaintiff had

never committed a crime, are not enough, alone, to nudge a complaint across the line to

plausibility.  *Id.* at *10-*11.  Critical for asserting plausible claims against a specific

defendant are allegations that the defendant in question had a suspicious pattern of

accesses.  *Id.* at *11.

### 2.      Marquardt's Allegations

Here, Marquardt makes many similar allegations to the plaintiff in *Myers*.  First,

she highlights her myriad family and relationship ties to law enforcement, specifically to

law enforcement organizations and officers in many of the communities where the

searches occurred.  Her ex-husband, for example, was a law enforcement officer for the

Minnesota State Patrol, and had ties to law enforcement in many communities.  (Compl.

¶¶ 67-70.)  He had strong ties to Dakota County, so much so that a Dakota County officer

was in their wedding party.  (*Id.* ¶ 70.)  He was also raised in South St. Paul, was based

out of St. Paul, and spent significant amounts of time in West St. Paul.  (*Id.* ¶ 67.)  After

her marriage to her ex-husband was dissolved, Marquardt dated and was married to a

Minneapolis police officer for seven years, who was tied to law enforcement in other

neighboring communities, both through his work and a law enforcement motorcycle club.

(*Id.* ¶ 74.)  Second, Marquardt notes that she has not been investigated or committed

crimes in any of the relevant communities, nor has she been tied to any criminal or civil

proceedings in those communities.  (*Id.* ¶¶ 95-246.)  Finally, she cites the timing and

significant volume of the searches[9] and the Legislative Auditor's report.  (*Id.* ¶¶ 247, 256-59, 346, 399.)

As for why Marquardt would generate the interest of law enforcement, Marquardt has made allegations that are on par with those in *Myers* or *McDonough*.  While she has not alleged notoriety, fame, or unusual professional prominence, she has alleged significant ties to law enforcement that could plausibly give rise to law enforcement knowing about or being interested in her.  Indeed, Marquardt's ex-husband, sister, brother, and ex-boyfriend all work or have worked in law enforcement.  She has demonstrated decades of social ties to law enforcement, specifically in many of the communities where the searches took place (e.g., Dakota County, West St. Paul, and Minneapolis).  The Court finds that Marquardt has pled sufficient facts to "explain why [she] would garner Law Enforcement Does' interest."  *McDonough*, 2015 WL 4940110, at *17.

In light of *McDonough*, however, the more important question is whether, as to the remaining defendants, Marquardt has alleged "suspicious access patterns and timing of accesses that nudge claims against some Defendants across the line from conceivable to plausible."  *Id.* at *11 (internal quotation marks omitted).  Again, the Court is looking for

---

[9] While the defendants argue that the volume and timing of the accesses that are **not** time-barred are not suspicious, the Eighth Circuit has explicitly held that the Court may take into account the totality of the allegations in the complaint, including the timing and volume of accesses that ultimately may not support specific claims because they are time-barred. *McDonough*, 2015 WL 4940110, at *10 ("Furthermore, allegations concerning data accesses that do not themselves constitute violations because they are barred by the statute of limitations still may be considered in assessing the plausibility of timely claims.").

1) accesses on the same day as or within a few hours of access by other, unrelated entities during the limitations period; 2) multiple late-night accesses during the limitations period; or 3) a history of frequent suspicious access fitting the above criteria, even if prior to the limitations period, coupled with accesses within the limitations period.

*Id.* at *13.

As for Dakota County, there are thirteen total accesses; twelve of which are barred by the statute of limitations. None of these searches occurred late at night (i.e., between 11:00 p.m. and 6:00 a.m.). *Id.* at *14. As for accesses by different entities close in time, there are three key time period patterns shown by Dakota County: (1) late October 2007; (2) early May 2004; and (3) late March 2004. The audit shows that, aside from Dakota County, at least one other agency accessed Marquardt's information one time between October 25, 2007 and October 30, 2007. Similarly, one other agency accessed Marquardt's information two times around May 5, 2004; and one other agency accessed the information one time within a few days of March 23, 2004. These accesses do not amount to a suspicious pattern as described by the Eighth Circuit. *Id.* at *14. Similarly, the one lookup by the Centennial Lakes Police Department, which represents the city defendants of Centerville, Circle Pines, and Lexington, was at a normal time and does not coincide with other close-in-time accesses by unrelated entities. The three accesses by West St. Paul all occurred at a normal time. Indeed, they occurred at the same minute, which the city defendants argue means they should be construed as one access. (City Defs.' Mem. at 11 n.3, Nov. 17, 2014, Docket No. 90.) Marquardt appears to dispute that argument and repeatedly refers to West St. Paul as having engaged in three distinct accesses. (Marquardt Br. in Opp'n to City Defs.' Mot. to Dismiss at 4-5, Dec. 8, 2014,

Docket No. 107.)  In any event, they did not occur late at night and do not coincide with accesses at the same or similar time by other entities.  The accesses discussed above do not constitute a suspicious pattern and therefore Marquardt has not stated plausible DPPA claims against these defendants.  Consequently, the Court will grant the motions to dismiss as to the remaining claims against Dakota County and against the remaining city defendants, Centerville, Circle Pines, Lexington, and West St. Paul.

Finally, the Court considers the accesses by the City of Minneapolis.  All but four are barred by the statute of limitations.  As Marquardt notes in her complaint, some twenty of Minneapolis's accesses occurred late at night, between the hours of 11:00 p.m. and 5:00 a.m.  (Compl. ¶ 258.)  As to a pattern of close-in-time accesses by unrelated entities, there were not as many patterns in this case as in *McDonough*.  *See, e.g.*, *McDonough*, 2015 WL 4940110, at *14 (noting that, in total, there were 178 accesses of Johanna Beth McDonough's information by 46 different agencies or businesses between November 2, 2008 and November 8, 2008).  But there were still repeat access patterns. Minneapolis officers repeatedly accessed Marquardt's information on the same days, or close in time.  In one instance, Minneapolis officers accessed Marquardt's information twice, once after midnight and another time at 8:38 p.m., between October 16 and October 19, 2006.  Similarly, the Mendota Heights Police Department accessed her information after midnight on October 24, 2006, and the State Patrol accessed her information three times on October 16, 2006. The Court finds that these time-barred late-night and close-in-time accesses, combined with four accesses within the limitations period, are enough to show a suspicious pattern under *McDonough*.  Although

*McDonough* to some extent discussed bigger numbers in the aggregate, *id.* at \*12-\*17, it did not set a hard line on what constitutes a suspicious pattern.  The sheer volume of Minneapolis's accesses, combined with the many late-night and close-in-time searches, is enough to show a suspicious pattern and, in conjunction with the other allegations discussed above, assert plausible DPPA claims against Minneapolis.  Moreover, the city has not responded with persuasive alternative explanations for its accesses of Marquardt's information.  *See id.* at \*13 (rejecting the alternative explanation that law enforcement officers operate at all hours of the night).  As a result, the Court will deny the City of Minneapolis's motion to dismiss as to claims based on accesses that fall within the limitations period.[10]

### C.    DPS Defendants

Marquardt also asserts claims under the DPPA against the current, and former, DPS Commissioner, and other unnamed DPS officials ("DPS defendants").  (Compl. ¶¶ 263-341, 391-411, 425, 429, 433.)  This Court rejected similar claims against DPS defendants in *Gulsvig v. Mille Lacs County*, No. 13-1309, 2014 WL 1285785, at \*6, \*9 (D. Minn. Mar. 31, 2014).  In her response, Marquardt does not address *Gulsvig*, nor does she provide any compelling reason for the Court to reject its reasoning and conclusion in that case.  Consequently, the Court will grant the DPS defendant's motion to dismiss.

---

[10] To the extent Minneapolis asserts qualified immunity by incorporating the arguments of co-defendants who explicitly raised an immunity defense (e.g., Hennepin County), the Court will also reject that argument.  *See McDonough*, 2015 WL 4940110, at \*8 n.6.  Additionally, since only the City of Minneapolis and related "Does" remain, the Court need not address the motions by some defendants to sever Marquardt's action.

*See, e.g.*, *McDonough*, 2015 WL 4940110, at *17-*19 (concluding, at a minimum, that qualified immunity protected the DPS defendants because the court could not "say that, at the time of the alleged accesses, any reasonable official would have understood that DPS's policy of allowing the above-described government employees password-protected access to the database violated Drivers' rights under the DPPA"); *Myers*, 2014 WL 7399182, at *21.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1.      Marquardt's request to add Stearns County to the caption and docket [Docket No. 55] is **GRANTED.**

2.      Defendants' Blue Earth, Norman, Sherburne, and Stearns Counties' Motion to Dismiss [Docket No. 30] is **GRANTED**.  Marquardt's claims against Blue Earth, Norman, Sherburne, and Stearns Counties are **DISMISSED with prejudice**.

3.      Defendant Hennepin County's Motion to Dismiss [Docket No. 42] is **GRANTED**.  Marquardt's claims against Hennepin County are **DISMISSED with prejudice**.

4.      Defendant Met Council's Motion to Dismiss [Docket No. 61] is **GRANTED**.  Marquardt's claims against the Met Council are **DISMISSED with prejudice**.

5.     Defendant Minneapolis Park & Recreation Board's Motion to Dismiss [Docket No. 67] is **GRANTED**.  Marquardt's claims against the Minneapolis Park & Recreation Board are **DISMISSED with prejudice**.

6.     Defendant City of St. Paul's Motion to Dismiss [Docket No. 72] is **GRANTED**.  Marquardt's claims against the City of St. Paul are **DISMISSED with prejudice**.

7.     Defendant Ramsey County's Motion to Dismiss [Docket No. 77] is **GRANTED**.   Marquardt's claims against Ramsey County are **DISMISSED with prejudice**.

8.     Defendant Dakota County's Motion to Dismiss [Docket No. 82] is **GRANTED**.  Marquardt's claims against Dakota County are **dismissed with prejudice**.

9.     The city defendants' Motion to Dismiss [Docket No. 87] is **GRANTED.** Marquardt's claims against the Cities of Blaine, Bloomington, Brooklyn Center, Burnsville, Cannon Falls, Centerville, Circle Pines, Cottage Grove, Detroit Lakes, Dundas, Eagan, Farmington, Grand Rapids, Lexington, Mankato, Mendota Heights, Minnetonka, New Hope, New Ulm, Rosemount, Roseville, St. Paul Park, and West St. Paul are **DISMISSED with prejudice**.

10.     Defendant City of Minneapolis's Motion to Dismiss [Docket No. 93] is **GRANTED in part** and **DENIED in part.**

a.     The motion is **GRANTED** as to Marquardt's time-barred claims against the City of Minneapolis which are based on accesses that occurred prior to July 21, 2010.  Those claims are **DISMISSED with prejudice**.

       b.      The motion is **DENIED** in all other respects.

11.    The DPS Defendants' Motion to Dismiss [Docket No. 48] is **GRANTED**.

12.    Marquardt's request to add the City of Hastings to the caption and docket [Docket No. 107] is **DENIED**.   Her claims against Hastings are **DISMISSED with prejudice**.

DATED:   September 30, 2015          _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                  JOHN R. TUNHEIM
                                            Chief Judge
                            United States District Court